## Weidler v. Washington National Insurance Co.

*P. Nelson Alexander*, for plaintiff.

*Robert O. Beers*, for defendant.

BUCKINGHAM, J., November 12, 1963.—Plaintiff, by his complaint filed on October 23, 1962, seeks to require defendant to endorse two whole life policies of insurance issued by defendant to plaintiff as fully paid up on the anniversary of the policies after plaintiff reached the age of 74, and to recover from defendant premiums paid by plaintiff to defendant after plaintiff reached the age of 74. Defendant's answer admits the issuance of the policies to plaintiff, but alleges they were erroneously issued through clerical error on the part of defendant and that what plaintiff was only entitled to was two whole life policies, under which the premiums were to be payable until the death of insured plaintiff, at which time the policies would be marked fully paid. Defendant's answer suggests the policies should be reformed, but defendant has not counterclaimed for any such relief. Plaintiff's reply denies the allegations of defendant's answer. By stipulation of counsel, filed with the court on September 24, 1963, it was agreed that no testimony would be necessary, as there is no material discrepancy in the facts as set forth in the complaint and answer and all material facts set forth in either are tacitly admitted by the responsive pleading thereto. It was further stipulated and agreed that oral argument was waived and the case was submitted to the court on briefs only.

The issues are whether plaintiff is entitled to have his policies marked "fully paid" as of the anniversary

of the policies after his 74th birthday and whether plaintiff is entitled to a recovery of the excess premiums paid.

## FINDINGS OF FACT

1. Plaintiff is a natural person, sui juris, who resides at 411 East Green Street, Shiremanstown, Pa.

2. Defendant is a corporation, incorporated under the laws of the State of Illinois, having an office in the Commonwealth of Pennsylvania at 1408 Third Street, York, Pa.

3. Pursuant to application executed by plaintiff on January 27, 1938, defendant issued two industrial weekly premium modified life policies, no. 02673512, which became effective January 31, 1938, and no. 02706537, which became effective March 21, 1938, both on the life of plaintiff. The policies aforesaid provided, inter alia, that the face value of each policy shall be $500, the weekly premium shall be $.53, the policy was to continue in force until the age of plaintiff had reached age of 65, and each policy contained certain guaranteed options for conversion.

4. On April 21, 1948, plaintiff elected to take advantage of option I contained in the aforementioned policies, which provides as follows:

"This policy may be continued as a Whole Life Policy for the amount stated in the Schedule upon payment of the premium stated in Table I on the reverse side hereof according to the age at issue of this policy, which premium shall be payable on or before each Monday during the continuance of this contract until the death of the insured".

Plaintiff's selection of option for each policy is as follows:

"April 21, 1948

"Selection of the Option at Age 65
(next birthday) On Policy
"Robert M. Weidler

"In accordance with Option 1 on my Policy No., which has now reached its anniversary where my age is 65 next birthday, I instruct the Company to continue this as a Whole Life Policy for the amount stated in the schedule, and I hereby agree to pay the premium of $.76 after the tenth anniversary of the contract in accordance with Option 1 and Table 1.

"s/ Robt. M. Weidler
"Insured"

Option 1 and table 1 plainly appear on the policies.

5. Thereafter, on or about May 24, 1948, defendant issued an industrial weekly premium whole life policy, non-participating, paid up on anniversary of policy after age 74, for each of the aforementioned policies retaining the same policy number. These policies provide, inter alia, as follows:

A. "In consideration of the payment of the premium stated in the schedule on the reverse side hereof, on or before each Monday during the continuance of this Policy until the Anniversary of the Policy next after the Insured shall have passed his or her 74th birthday . . .

B. "This Policy shall be incontestable after it has been in force, during the lifetime of the Insured, for a period of two years from its date, except as to the provisions relating to specific loss or to accidental death benefit.

C. "The weekly premium shall be $.76 per week.

D. "The amount of Insurance is $500.00".

6. The said two policies, paid up on anniversary after age 74, were issued in error to plaintiff on account of a clerical mistake of defendant, and plaintiff should have received, instead, two policies similar to the ones issued, with the exception that they should have been whole life policies to be marked, "fully paid", only upon the death of plaintiff and only if the premiums had been paid until plaintiff's death.

7. Up until the Fall of 1957, neither plaintiff nor defendant knew of the aforesaid mistake of defendant, but plaintiff should have known of the mistake upon receipt of the erroneous policies, as the mistake was easily discernible upon the faces thereof.

8. The weekly premiums for each of the erroneously issued policies were $1.78 instead of $.76.

9. Plaintiff has paid $.76 weekly premiums on each of the erroneously issued policies to date.

10. Plaintiff reached the age of 74 years on February 2, 1957, having been born on February 3, 1883.

11. In the Fall of 1957, plaintiff forwarded the two erroneously issued policies to defendant, requesting defendant to mark the policies as "paid-up life policies". Defendant refused to do this and promptly informed plaintiff of his mistake.

12. Defendant forwarded to plaintiff two identical endorsements dated March 14, 1958, one to be attached to each of the two erroneously issued policies. These endorsements, after reciting all of the foregoing, read as follows:

"Washington National Insurance Company is ready and willing to and will provide all rights and benefits as set forth by the terms of Robert Weidler's original policy and his executed written option selection dated April 21, 1948, and will continue to maintain the policy to which this endorsement is attached in full force as a Whole Life Policy so long as the weekly premium of 76c is paid on or before each Monday until the death of said Robert Weidler".

Copies of these two endorsements are attached to and made a part of the complaint in this case.

13. On March 14, 1958, plaintiff was represented by counsel, but did not thereafter, until May 11, 1961, make any further demand upon defendant to cancel the endorsements of March 14, 1958.

14. Plaintiff still persists in his demand for paid-up

policies as of the anniversary date of the policies, after his age of 74 years, and defendant still refuses to issue same to plaintiff, but defendant is willing to maintain both policies in force as whole life policies for $500 each, so long as the $.76 weekly premium for each contract is paid on or before each Monday until the death of the insured plaintiff.

## DISCUSSION

The question of whether plaintiff is entitled to have his policies marked "fully paid" as of the anniversary of the policies after his 74th birthday and to a recovery of the alleged excess premiums paid, in view of the unilateral mistake on the part of defendant but which mistake was readily discernible to plaintiff on the face of the policies, must be answered in the negative. The law governing this situation is set forth in Kaufman v. New York Life Insurance Company, 111 Pa. Superior Ct. 273, 169 Atl. 447 (1933), affirmed per curiam 315 Pa. 34, 172 Atl. 306 (1934). The court said at page 280:

"It will be noted that these cases fall generally into two categories; first, those in which there was an obvious conflict between two different clauses of the same policy, with the result that the insured could not be said to have been misled; and second, those in which the mistake was so great that an inference might easily have arisen that the insured must have recognized the error. If the facts of this case had brought it within either class, it might be held that the mistake could be corrected—not upon the ground that a mutual mistake existed, but upon the cognate ground that a mistake by one party, coupled with knowledge thereof by the other, may, under certain circumstances, afford a basis for equitable relief. 'It has been held with obvious justice that a mistake by one party and knowledge of the mistake by the other, will justify relief as fully as mutual

mistake:' Williston on Contracts, Vol. III, sec. 1497; see also sec. 1548".

This principle has been affirmed in two other Pennsylvania cases, Equitable Life Assurance Society of U. S. v. Saurman, 126 Pa. Superior Ct. 184, 190 Atl. 422 (1937), and Woodmen of the World Life Ins. Co. v. Arnold, 22 D. & C. 2d 607, affirmed 194 Pa. Superior Ct. 256, 166 A. 2d 290 (1960). To the same effect are Columbian National Life Insurance Company v. Black, (C. C. A. 10), 35 F. 2d 571 (1929), and Flax v. Prudential Life Insurance Company of America, 148 F. Supp. 720, U. S. D. C., S. D. Calif. (1957). In the three above Pennsylvania cases, where the insurance companies sought reformation, the policies were not reformed by the court, but that was only because the facts of those cases did not fit the above principle. In the present case, if defendant had asked for reformation, the policies would have to be reformed, because the facts do fall within this principle. Here, the parties agreed to the issuance of a certain type policy and an entirely different type was issued to plaintiff because of the mistake of defendant. Assuming plaintiff did not realize the mistake, he should and could have, if he had inspected the policies. Clearly, it would be inequitable, under the circumstances, to allow plaintiff a windfall at the expense of defendant, since defendant's mistake plainly appeared on the face of the policies erroneously issued to plaintiff. This is the factor which distinguishes the present case from the three previously mentioned Pennsylvania cases and which calls for the application of the principle set out in Kaufman v. New York Life Insurance Company, supra.

The policies erroneously issued to plaintiff contained a clause which made the policies incontestable after the policy had been in force for a period of two years, except for nonpayment of premiums and except as to the provisions relating to specific loss or to accidental death

benefit. Obviously, defendant must overcome the incontestable clause hurdle, since its position is that the policies should be reformed even though they have been in effect for more than two years. The majority view in this country is that the incontestable clause does not apply where the insurance company is not seeking to invalidate the policy itself on the basis, for example, of fraud or misrepresentation in the application for the policy, but is rather seeking to reform the policy to conform to the real agreement of the parties. The leading case for the majority view is Columbian National Life Insurance Company v. Black, supra, where the court said:

"This is not a contest of the policy, but a prayer to make a written instrument speak the real agreement of the parties. It would hardly be suggested that an assured, who brings an action to reform a policy and to recover under it as reformed, was contesting the policy within the meaning of this clause. Yet the clause is not one-sided, and the right of the assured to have the writing express the agreement actually made is no greater than the right of the assurer . . . Without going at length into the purpose and history of the clause and without intimating that an actual contest may not be found under the cloak of reformation, we hold that an action to correct a purely clerical error in a policy issued, so that it will speak the truth as to the agreement of the parties, is not barred by the incontestable clause".

Alabama, Massachusetts, Nebraska, New Jersey, New York, Ohio, Tennessee and Washington follow the majority view, the most recent case in support thereof being Flax v. Prudential Life Insurance Company of America, supra, in which the Federal Court in California applied the New York law.

The minority view, as represented by the case of Richardson v. Travelers Insurance Company, 171 F.

2d 699, 7 A. L. R. 2d 501 (1948), takes the opposite viewpoint that the contract of insurance itself must govern, and if it contains an incontestable clause, no reformation will be allowed unless it is sought on the basis of an exception contained in the incontestable clause. Richardson and the minority view have been roundly criticized. See 97 U. of Pa. L. Rev. 741, 7 A. L. R. 2d 504, discussing both views.

No Pennsylvania cases have been found where this question has been raised, but after carefully considering the rationale of both the majority and minority views, it is felt that the majority view is sounder and more equitable and it is hereby adopted, and if defendant had prayed for the relief of equitable reformation, it would have been granted.

### CONCLUSIONS OF LAW

1. Defendant's mistake in issuing the wrong policies to plaintiff was of such a nature and was sufficiently ascertainable on the face of the policies so as to charge plaintiff with notice thereof, so as to make the policies subject to equitable reformation, if such relief had been requested by defendant.

2. Defendant is not barred by the incontestable clause in the policies from the defense of its mistake and constructive knowledge thereof by plaintiff.

3. Plaintiff's complaint should be dismissed.

### DECREE NISI

And now, to wit, November 12, 1963, it is hereby ordered, adjudged and decreed as follows:

(1) Plaintiff's prayer for relief is hereby refused and plaintiff's complaint is hereby dismissed.

(2) Plaintiff shall pay the costs of these proceedings.

(3) An exception is noted for the plaintiff.

The prothonotary shall give notice of the entry of this decree, as required by Pa. R. C. P. 1517. Unless exceptions are filed, as provided by Pa. R. C. P. 1518,

this decree shall be entered as a final decree and notice thereof shall be given, as provided by Pa. R. C. P. 1519.